[No. 605. Decided January 29, 1889.]

CHARLES Q. MARTIN v. WHITMAN COUNTY.

COUNTIES — COUNTY COMMISSIONERS — EXPENSES OF TAX LIST— CONTRACT— CAUSE OF ACTION.

Code Wash. T., § 2673, subds. 5, 6, authorizes the county commissioners to allow accounts chargeable against the county not

otherwise provided for, and to have the care of county property and management of county funds and business. *Held*, that they could make a contract to pay five per cent. for making a tax list of all delinquent taxes in a county.

The contract being to pay five per cent. on the total amount of the tax-list, and the list being made and presented, and the board having made an order that five per cent. of the delinquent taxes be paid on the contract as collected, a cause of action arises immediately against the county, under Code Wash. T., § 2695, such order being a substantial disallowance of plaintiff's claims.

*Appeal from District Court, Whitman County.*

Action by Charles Q. Martin against Whitman county, to recover for making a tax list. A demurrer to the complaint was sustained, and plaintiff appeals.

*P. C. Sullivan, Frank H. Brown* and *D. J. Crowley,* for appellant.

*Mark A. Fullerton,* for appellee.

The opinion of the court was delivered by

BURKE, C. J.—This case comes before us by appeal from the judgment of the court below sustaining a demurrer to the plaintiff's complaint. It appears from the complaint in the action, that in August, 1886, at a regular session of the board of county commissioners of Whitman county, held at Colfax, the county seat, the following order was made by the board, and regularly entered in their proceedings:

"It is hereby ordered that C. Q. Martin make a tax list of all taxes delinquent in Whitman county, and that he receive therefor five per cent. on the total amount of said tax-list; that said five per cent. is to be paid out of the tax due Whitman county on said tax-list, as it is collected."

The plaintiff, acting under and upon the faith of this order, made a tax-list of all taxes delinquent in Whitman county, and delivered the same to the board of county commissioners at a subsequent term, in open session, and the

board formally accepted the list thus made, by the following order:

"And now comes C. Q. Martin, and presents his bill for compiling a delinquent tax-list, according to an agreement and by order of the commissioners, made at the August, 1886, term, and the county commissioners hereby order that the said Martin be paid five per cent. of all the moneys collected as such delinquent tax, as it is collected; that said order was made before any money was collected on said delinquent tax-list."

At the regular session of the board held in May, 1887, the plaintiff presented the following bill to the board:

COLFAX, WASHINGTON TERRITORY, May 4th, 1887.

"*Whitman County, to C. Q. Martin, Dr.*

"To making delinquent tax-list of Whitman County, Washington Territory (as per contract made with Whitman county, W. T.) at their August, 1886, term of said commissioners' court......................................... $3,428.81.

"I hereby certify that the above bill is correct.

"[Signed]          C. Q. MARTIN."

Upon the presentation of this bill, the board made the following order in relation thereto:

"And now comes C. Q. Martin, and presents to the board his bill for compiling a delinquent tax-list, according to an agreement and by order of the board of county commissioners of Whitman county, W. T., made at their regular August, 1886, term; and it is hereby ordered that said C. Q. Martin be paid five per cent. of all the money collected from said delinquent tax roll, as it is collected, in accordance with all former orders of commissioners in this matter."

It appears, further, from the complaint that the total amount of the delinquent taxes of Whitman county was $68,576.25, and that, since the delivery of plaintiff's list to the county, $2,000 of the delinquent taxes has been paid to the county. The court below sustained the demurrer to the complaint, on the ground that the board of county commissioners had no power to make the contract set forth in the complaint, and the counsel for the appellee urges this view upon us here with earnestness and ability.

It is a familiar principle that a board of county commissioners can exercise no powers which are not in express terms or by fair implication conferred upon it by law, and whenever the board ventures beyond the scope of its powers its acts are void, and not binding upon the county. *Hodges v. City of Buffalo*, 2 Denio, 110; *Thomas v. Lee County*, 3 Wall 327; *Wells. v. Supervisors*, 102 U. S. 625; *Turnpike Co. v. Commissioners*, 72 Ind. 226.

Turning to the statutes of the territory, we find that among the powers conferred upon the boards of county commissioners are the following:

Sec. 2673.   The several boards of county commissioners are authorized and required: . . . (5) To allow all accounts legally chargeable against such county not otherwise provided for, and to audit the accounts of all officers having the care, management, collection or disbursement of any money belonging to the county, or appropriated to its benefit.   (6) To have the care of the county property and the management of the county funds and business, and in the name of the county to prosecute and defend all actions for and against the county, and such other powers as are or may be conferred by law."

By this section, taken in connection with other provisions of the statute not necessary to cite here, the board of county commissioners are given a sort of supervisory power over the affairs of the county.   They are made the business agents, so to speak, of the county.   They have the care and management of the county funds and county business. And while they have no direct authority over, or power to interfere with, the several county officers in the discharge of their respective duties, yet they have the power, and it is made their duty, to care for the county property, and manage the county funds and business, and in the exercise of such powers they may, if they see fit, employ experts to examine the books of county officers; they may employ private counsel to assist the district attorney in defending the county against suits brought against it, or in prosecut-

ing suits in behalf of the county against others; and, as in the case at bar, they may employ persons to make compilations or transcripts from any of the county records whenever, in their judgment, the interests of the county may require it.   In this case there was a very large amount of delinquent taxes, extending over a period of several years. It was important to the county to secure the collection of these delinquent taxes, and it was plainly the duty of that body having the care and management of the county business to employ such persons, and take such measures as, in their judgment, would best accomplish that end.   *Wilhelm v. Cedar County*, 50 Iowa, 254; *Hornblower v. Duden*, 35 Cal. 664; *Smith v. Mayor of Sacramento,* 13 Cal. 531; *Tatlock v. Louisa County*, 46 Iowa, 138; *Hawk v. Marion County*, 48 Iowa, 472.

It is further urged in behalf of the county that, even if the contract sued upon is valid, the complaint does not state facts sufficient to constitute a cause of action against the county; that by the orders which they made the county commissioners had done all they could do; that the remedy of plaintiff, if he has any, is against the auditor personally; and that, even if this should not be so, the action is premature, because plaintiff's claim is payable out of the delinquent taxes as collected, and sufficient had not been collected at the time of the commencement of suit to pay the amount he claimed.

We are not called upon in this case to decide upon the proper construction of the contract in question, and expressly refrain from doing so.   But, whatever may be the true construction of this contract, we think it clear that the plaintiff has stated a good cause of action against the county.   Nor has he brought his action prematurely.   He presented his claim to the board of county commissioners, and they made an order which amounted to a disallowance of it, and he was then entitled under our statutes to bring his action.   Code Wash. T., § 2695.

The judgment of the district court is reversed, with costs, and the cause remanded for trial.

ALLYN and NASH, JJ., concur.