[No. 4797.   Decided April 20, 1904.]

AMERICAN BRIDGE COMPANY OF NEW YORK, *Appellant,*
v. H. H. WHEELER, *as County Auditor, etc., et al.,*
*Respondents.*[1]

COUNTIES—WARRANTS—ISSUANCE.   A county warrant is not
"issued" until it is actually delivered to the person authorized to
receive it, and the auditor's forgery of the payee's indorsement
and a wrongful delivery do not discharge the duty to issue a war-
rant to the person entitled thereto (FULLERTON, C. J., dissents).

SAME—DUTY TO ISSUE WARRANT UPON CLAIM ALLOWED BY COM-
MISSIONERS—MANDAMUS.   Since the allowance of a claim by the
county commissioners has the force of a judgment, the auditor
has no discretion, and his duty to issue a warrant therefor is min-
isterial and may be enforced by mandamus.

SAME—MANDAMUS TO COMPEL ISSUANCE OF COUNTY WARRANT—
WRONGFUL DELIVERY BY PREDECESSOR—ACTION ON OFFICIAL BOND—
ADEQUATE REMEDY AT LAW.   Mandamus will lie to compel the
county auditor to issue a warrant, when the former county aud-
itor drew a warrant, forged the payee's name, and drew and mis-
appropriated the funds; and the fact that the relator has a remedy
on the official bond of the auditor will not preclude the remedy by
mandamus, since the remedy on the bond is inadequate to compel
the performance of the officer's duty, and a remedy by ordinary
action will not defeat the right to mandamus, unless it is a rem-
edy against the respondent in the mandamus proceedings (FUL-
LERTON, C. J., dissents).

SAME—MANDAMUS—PARTIES—COUNTY COMMISSIONERS PROPER
PARTIES IN ACTION AGAINST AUDITOR.   County commissioners
may be proper but they are not necessary parties to a proceeding
in mandamus against the county auditor to compel him to issue a
warrant upon a claim allowed by the commissioners against the
county, since the county may be affected by the result (ANDERS,
J., dissents).

Appeal from a judgment of the superior court for Whit-
man county, Chadwick, J., entered June 11, 1903, upon

[1]Reported in 76 Pac. 534.

sustaining demurrers to a petition for a writ of mandate, dismissing the proceeding.    Reversed.

*Root, Palmer & Brown* and *McCloskey & Canfield,* for appellant.

*Robert M. Hanna,* for respondents, to the point that an unauthorized delivery of the warrant was not within the legal duties of the auditor, and, not having been confirmed, the county is not liable, cited *Mitchell v. Rockland,* 41 Me. 363, 66 Am. Dec. 252; *Wallace v. Muscatine,* 4 G. Greene (Iowa) 373, 61 Am. Dec. 131; *Thayer v. Boston,* 19 Pick. 511, 31 Am. Dec. 157; *Sigmonds v. Clay County,* 71 Ill. 355; *Summers v. Davies County,* 103 Ind. 262, 53 Am. Rep. 512; *Vigo Tp. v. Knox County Com'rs,* 111 Ind. 170, 12 N. E. 305; *Estep v. Keokuk County,* 18 Iowa 199.    Raby was plaintiff's agent for the delivery of the warrant.    *State v. Raby,* 31 Wash. 111, 71 Pac. 771. Mandamus will not lie to compel the issuance of a second warrant where the first has been illegally paid to a defaulting agent, since the principal has a remedy at law. *State v. Auditor of Hamilton County,* 5 Ohio S. & C. P. Dec. 545; 33 Cent. Dig., Mandamus, col. 2093, § 31; *Crandall v. Amador County,* 20 Cal. 72; *People v. Thompson,* 25 Barb. 73; *State ex rel. Townsend Gas etc. Co. v. Superior Court,* 20 Wash. 502, 55 Pac. 933.    Former payment to an unauthorized person is not ground for mandamus compelling issuance of a new warrant. 19 Am. & Eng. Enc. Law (2d ed.), 789; *State v. Lewis,* 6 Ohio Dec. 221, 4 Ohio N. P. 176; *State ex rel. Thayer v. Mish,* 13 Wash. 302, 43 Pac. 40; *Bates v. Porter,* 74 Cal. 224, 15 Pac. 732; *Eyerly v. Board of Supervisors,* 81 Iowa 189, 46 N. W. 986.    Mandamus lies only in case of default by respondent.    §§ 5755, 5756, Bal. Code; *Northwestern Warehouse Co. v. Oregon R. & Nav. Co.,* 32

Wash. 218, 73 Pac. 388; *Wright v. Kelly* (Idaho), 43 Pac. 565; *People v. Davis,* 93 Ill. 133. Plaintiff's remedy is by action on the defaulting officer's bond. § 1519, Bal. Code; 4 Am. & Eng. Enc. Law, 466.

HADLEY, J.—This is a proceeding in mandamus, whereby it is sought to compel the issuance of a county warrant. On the 8th day of October, 1901, the board of county commissioners of Whitman county allowed, and ordered paid, to relator the sum of $1,753, the same being the balance due for the construction of a steel bridge across the Palouse river, in the city of Palouse, in said county. The board at said time directed the then county auditor, one C. G. Raby, to issue a county warrant to the relator for said sum, drawn on the treasurer of said county, and payable from the road and bridge fund. On the 18th day of October, 1901, said Raby, as county auditor aforesaid, did, pursuant to said order of the board, draw a warrant for said sum, payable to the order of relator from said fund. Thereafter, without the authority, knowledge, or consent of relator, the said Raby indorsed said warrant as follows: "American Bridge Company, by C. G. Raby, County Auditor," and then presented the same to the county treasurer, who paid the amount called for in the warrant to said Raby, and the latter retained and appropriated the proceeds to his own use. No part of said sum of $1,753 has been paid to relator, and, prior to the commencement of this action, the relator demanded of said Raby, while the latter was county auditor, that he execute and deliver to it a warrant for said sum, as ordered and directed, but he neglected and refused to issue to relator any warrant on account of said indebtedness. H. H. Wheeler, one of the respondents in this mandamus proceeding, is the successor of said Raby as county auditor,

and a similar demand was made of him, which was also refused. The above facts appear in relator's petition for a writ of mandate. The said Wheeler, as the present county auditor, and also the present members of the board of county commissioners, were made parties to the proceeding. The several members of the board of county commissioners joined in a separate demurrer to the petition and the said Wheeler, as auditor, also demurred separately thereto. The demurrers were by the court sustained. The relator elected to stand upon its petition, refusing to plead further, and judgment was thereupon entered, dismissing the action. The relator has appealed.

It appears by the petition that the county commissioners regularly allowed appellant's claim, and ordered the county auditor to issue a warrant to appellant in payment of such approved claim. He drew and signed such a warrant, but it was never delivered to appellant, or to any one authorized to receive it. The auditor did not therefore "issue" the warrant. The Century Dictionary defines the word "issue," when used as a verb, as follows: "To send out; deliver for use; deliver authoritatively; emit; put into circulation." Under the above definition, a county warrant is not "issued" until it is actually delivered into the hands of a person authorized to receive it. Such was expressly held in *State v. Pierce,* 52 Kan. 521, 35 Pac. 19. The same principle, in effect, was declared in *Yesler v. Seattle,* 1 Wash. 308, 25 Pac. 1014, in which case the court observed as follows:

"In financial parlance the term 'issue' seems to have two phases of meaning. 'Date of issue,' when applied to notes, bonds, etc., of a series, usually means the arbitrary date fixed as the beginning of the term for which they run, without reference to the precise time when convenience or the state of the market may permit of their sale or delivery, and we see no reason why the act of March

26, 1890, should not have that interpretation. When
the bonds are delivered to the purchaser, they will be
'issued' to him, which is the other meaning of the term."
Section 393, Bal. Code, which enumerates the duties of
county auditors, among other things contains the follow-
ing:

"For claims allowed by the county commissioners . . .
he shall draw a warrant on the county treasurer made pay-
able to the claimant or his order . . . and when a
warrant is issued, the stub shall be carefully retained
. . ."

His duty is, therefore, manifest. He shall not only
"draw" the warrant, but he shall also "issue" it—that is
to say, *deliver* it; and when he issues it, he shall retain
the stub. Thus, the mere drawing is not an issuance, but
the latter requires the additional act of a subsequent au-
thoritative delivery. When so delivered, the stub shall be
retained, and issuance is then complete.

Appellant is, therefore, in the position of holding a
claim duly approved and allowed by the county commis-
sioners, for which no warrant has ever been issued. The
allowance of the claim by the board of county commis-
sioners had the conclusive effect of a judgment. *Martin
v. Supervisors etc.,* 29 N. Y. 645; *Kelly v. Wimberly,* 61
Miss. 548; *Johnson v. Campbell,* 39 Tex. 83. The audi-
tor, therefore, has no discretion in the premises. His
duty is clearly declared by statute, § 393, *supra.* It was
the duty of the former auditor to issue the warrant, but,
he not having done so, it follows the office, and, inasmuch
as it remains undischarged, it becomes the obligation
of the respondent Wheeler, as the successor of Raby and
present incumbent of the office, to discharge the duty.
The duty involves no discretion, is purely ministerial, and
mandamus is therefore the proper remedy to compel its

performance. Bal. Code, § 5755; *Abernethy v. Medical Lake,* 9 Wash. 112, 37 Pac. 306, *State ex rel. Sheehan v. Headlee,* 17 Wash. 637, 50 Pac. 493; *State ex rel. Ross v. Headlee,* 22 Wash. 126, 60 Pac. 126. The forgery of appellant's indorsement, and the unauthorized turning over, to some one else, of a warrant merely drawn but not issued, although it was all done by the incumbent of the auditor's office, did not discharge the duty of that office to appellant, and does not constitute any defense to the action. It is also immaterial that the appropriation of the money was made by the predecessor of the present incumbent of the office. *People ex rel. Dannat v. Comptroller,* 77 N. Y. 45.

Respondents urge that appellant has a plain, speedy, and adequate remedy by suit upon the official bond of the former county treasurer. We do not think appellant should be driven to the extremity of litigating with bondsmen concerning an obligation owing to it from the county, and in respect to which appellant has been in no way at fault. The county's agents—the two auditors—have failed to discharge their duty, and that should not be urged as a reason why appellant, an innocent claimant, should be required to enter into vexatious litigation with persons who are entire strangers to its original contract with the county, out of which its present claim arose. In *State ex rel. Craig v. Dougherty,* 45 Mo. 294, it was held that the fact that the relator had a remedy on the respondent's official bond did not preclude the remedy by mandamus. The same was held in *Babcock v. Goodrich,* 47 Cal. 488. To the same effect is *State ex rel. Van Vliet v. Wilson,* 17 Wis. 709.

"Though corporations and ministerial officers are liable to be sued for neglect of duty, yet the writ of mandamus will go to compel a proper execution of their duties,

such suits not accomplishing the object desired—the fulfillment of the duty." Merrill, Mandamus, § 109.

The same rule is stated by another author as follows:

"Nor will the fact that the party aggrieved by the non-performance of official duty has a remedy by an action against the officer upon his official bond prevent the courts from lending their aid by mandamus to enforce the duty, the remedy upon the bond being inadequate for the grievance." High, Extr. Leg. Rem. (3d ed.), § 35.

Moreover, the plain, speedy, and adequate remedy by an ordinary action, which will defeat the right to mandamus must be a remedy against the respondent in the mandamus proceedings, and not against third persons. Merrill, Mandamus, § 53, p. 59; *Williams v. Clayton,* 6 Utah 86, 21 Pac. 398; *Palmer v. Stacy,* 44 Iowa 340; *State ex rel. Sears v. Wright,* 10 Nev. 167. Appellant, under its contract with the county, is entitled to receive a warrant. It is the duty of the auditor to issue such warrant, and appellant is entitled to have that duty discharged without being driven to sue the bondsmen of a former county auditor. There is no other plain, speedy, and adequate remedy to compel the respondent auditor to discharge his said duty.

The county commissioners were made parties in this proceeding on the theory that the county will be ultimately affected by the result. Under the circumstances detailed in the allegations of the petition, we think the commissioners were not improperly joined as parties, although they may not have been necessary ones. We therefore believe that the court erred in sustaining each of the demurrers to the petition.

The judgment is reversed, and the cause remanded, with instructions to the lower court to overrule the demurrers.

DUNBAR and MOUNT, JJ., concur.

ANDERS, J.—While I believe the court erred in sustaining the demurrer to the complaint herein, interposed by the county auditor, I am of the opinion that the commissioners were not proper parties to the action, and, for that reason, I think their demurrer was properly sustained.

FULLERTON, C. J. (dissenting).—I am unable to concur in either the opinion or the judgment in this case.     It seems to me the court has not only overlooked the real question presented by the record, but has decided erroneously the question thought to be presented.

Taking up, first, the question decided by the court, it will be observed, from the statement made at the opening of the main opinion, that this is not a case where no warrant has been issued, as a matter of fact, for the appellant's claim.     On the contrary, a warrant has not only been issued in fact for that claim, but it has been actually paid by the county treasurer. Wrongfully issued and paid, it may be, but issued and paid in fact, nevertheless.     But the majority, as I understand it, do not rest their decision on the ground that no warrant in fact has been issued, but hold that a warrant is not "issued," as a matter of law, unless it is actually delivered into the hands of a person authorized to receive it.     In other words, a wrongful issuance of a county warrant is not an issuance, within the meaning of that term as used in the statute.

I am frank to say I can find no satisfactory reason for this distinction, nor do I think it is supported by the authorities cited in the opinion of the court.     The statute does not undertake to define the term, and hence must be taken to have used it in its commonly accepted sense.     That sense is sufficiently indicated by the definition quoted in the majority opinion.     It is at once apparent, however,

that that definition is as applicable to a warrant wrongfully issued as it is to one delivered to a person authorized to receive it. When it is delivered to a person not authorized to receive it, it is "sent out;" it may be "delivered for use;" it is "emitted;" and may be "put into circulation;" any one of which acts amounts to an "issuance," according to the definition. And this, it seems to me, accords with the reason of the thing. In common parlance, to issue a county warrant means to take or send it out of the issuing office for use as a county warrant. Surely the lawmakers would not have so far departed from common usage as to use the word "issue," in the sense of "actually delivered into the hands of a person authorized to receive it," without saying so in express terms.

But it is said that the question was expressly decided in accordance with the ruling of the majority in the case of *State v. Pierce*, 52 Kan. 521, 35 Pac. 19. I do not so understand that case. There the defendants, who were members of the board of county commissioners of Barber county, state of Kansas, were informed against for doing certain acts as members of such board. The information contained eleven counts. The first count charged that the defendants unlawfully and fraudulently committed a fraud in their official capacity, and under color of their offices as members of the board of county commissioners, in unlawfully allowing greater sums on accounts against the county than were actually due thereon. The second, third, fourth, and fifth counts charged the defendants with allowing certain accounts in favor of certain named persons without such accounts being made out in separate items, or being verified according to the statute. The sixth, seventh, eighth, ninth, tenth, and eleventh counts charged the unlawful issuance of county warrants to the

above named persons, in violation of the terms of the
statute.    Of the warrants ordered, only one—the subject
of the sixth count—was in fact delivered, the others being,
at the time of the trial, "in the office of the county clerk,
and had not been delivered to any one."    One of the de-
fendants was convicted on all of the counts of the informa-
tion, and the other on the first five.    Both appealed.    One
of the contentions was that the defendant Pierce was
wrongfully convicted on the sixth, seventh, eighth, ninth,
tenth, and eleventh counts, because the warrants described
had not been issued.    Speaking to this question the court
said (see, 52 Kans. 528, 35 Pac. 22):

"To issue county warrants or orders means 'to send out;
to deliver; to put forth; to put into circulation; to emit—
as, to issue bank notes, bonds, scrip,' etc.    A county war-
rant or order is 'issued' when made out and placed in the
hands of a person authorized to receive it, or is actually
delivered or taken away.    So long as a county warrant
or order is not delivered or put into circulation, it is not
'issued,' within the terms of Sec. 1888.    If a warrant or
order, unlawfully directed to be issued by a board of
county commissioners, remains in the hands of the county
clerk, and is not delivered or sent out or put into circula-
tion by the county clerk, or anyone else, the wrong at-
tempted by the unlawful act does not succeed, because
there is no actual issuance of the warrant or order.    The
trial court, therefore, should have given the instructions
prayed for concerning the nondelivery and noncompletion
of the county warrants or orders; but the refusal of those
instructions was not prejudicial to D. L. Pierce, under the
sixth count of the information, because the evidence is
undisputed that the warrant or order to R. Lake was
actually delivered.    .    .    .    As the only warrant or order
for the purchase of the Lake City bridge ever delivered
or put in circulation was the warrant or order for R.
Lake, the only count in the information concerning the
unlawful issuance of a county warrant or order supported
by the evidence is the sixth count thereof."

4-35 WASH.

This is all that is said in the opinion that is pertinent to the question here. It will be noticed that, while the court does say that a county warrant is issued when it is made out and placed "in the hands of a person authorized to receive it," it adds, in the same connection and as a part of the same sentence, the phrase "or is actually delivered or taken away;" showing to my mind, that a wrongful delivery would be, in the opinion of the court, an "issuance" of the warrant. This conclusion follows, also, from the tenor of the case. The court permitted the conviction to stand on the sixth count, because the warrant mentioned in that count had been delivered and put in circulation. But that warrant was never delivered to a "person authorized to receive it." It could not be so delivered. It was wrongfully and fraudulently ordered drawn and issued, and its taking from the clerk's office by the person in whose favor it was drawn was as much an unlawful taking, both in law and morals, as would be its taking by a stranger to the record.

The case cited from this state seems to me also to be equally far from the question. The quotation made in the majority opinion from that case covers everything said that is at all pertinent, but even that shows clearly that the court did not then have this question in mind.

There is a case from this court, however, not cited in the main opinion, which seems to me to be very much in point. I refer to the case of *State v. Raby,* 31 Wash. 111, 71 Pac. 771, where a judgment convicting the county auditor for embezzling the very warrant in question here was affirmed by this court. In that case we said:

"By virtue of his office, defendant became the legal custodian and bailee of the warrant by operation of law. He therefore had the warrant rightfully in his custody, and also, by operation of the law, held it as the agent of

the owner.   When he assumed the duties of the office, he assumed to act as agent for the owner, under provisions of the law, and he is estopped from denying such agency. If he is agent to receive the money for the owner, he is agent to deliver it to him.   It would certainly be a puerile law that would constitute a public officer an agent to receive money for one with whom the municipality is dealing, and allow him to deny the agency for the purpose of escaping punishment for embezzling such property.   The objection that there was no value to the warrant until it was delivered, and that the ownership was not properly alleged, is equally untenable.   The warrant was duly authorized, legally drawn and issued by the proper officer for an approved claim against the county, by order of the proper authorities.   Its proper place was in the auditor's files, and, when it was removed from those files by the officer and cashed, it was so removed and cashed because it was of value, notwithstanding the fact that it had not yet been delivered to the proper owners."

Unless this be dictum, and I am convinced it is not, it is a direct holding by this court that this very warrant was actually issued by the county auditor.   It seems to me, therefore, both on reason and authority, that this warrant should be held, on the facts recited, to have been issued, within the meaning of that term as used in the statute.

Passing then to the second question:   This action is waged as a special proceeding against the county officers to compel them to perform a supposed duty which it is alleged they have neglected and refused to perform.   Its real purpose, however, is not thereby disguised.   The simple facts are that the county auditor has embezzled a county warrant, which was drawn in favor of, and which ought to have been delivered to, a county creditor, and that creditor is now undertaking to hold the county responsible for the auditor's unlawful act.   Whether the creditor should be permitted to do this is the real ques-

tion involved in this proceeding, and the question which should have been met by the court. But I shall not enter upon an extended discussion of it. It is sufficient to call attention to the familiar rule that a county is not liable for the malfeasance or misfeasance of its officers unless expressly made so by statute. In this state there is no such statute, and in my opinion the judgment of the trial court should be affirmed.