348 P.2d 912

**ARIZONA STATE LAND DEPARTMENT
and Obed M. Lassen, State Land Com-
missioner, Petitioners,**

v.

**Yale McFATE, Judge of the Superior Court
of the State of Arizona in and for the
County of Maricopa, Respondent.**

No. 7012.

Supreme Court of Arizona.

Jan. 27, 1960.

Jennings, Strouss, Salmon & Trask, and Roderic M. Jennings, Phoenix, for petitioners.

Wade Church, Atty. Gen. of Arizona, and Jay Dushoff, Asst. Atty. Gen., for respondent.

BERNSTEIN, Justice.

The Arizona State Land Department and the State Land Commissioner, Obed M. Lassen, (hereinafter called the "petitioners") made original application to this Court for a writ of prohibition requiring the Superior Court of Maricopa County, Honorable Yale McFate presiding, to desist and refrain from any further proceedings in an action instituted against them by the Attorney General. The Attorney General, acting on behalf of the State of Arizona, petitioned the Superior Court to enjoin petitioners from selling, pursuant to A.R.S. § 37–231 et seq., eight parcels of land located in Maricopa County and belonging to the State of Arizona. The Superior Court, on the day prior to the public auction of these parcels, entered a temporary restraining order enjoining the contemplated sale, and thereafter denied petitioners' motion to dismiss the petition and quash the restraining order. This Court has heretofore issued an alternative writ of prohibition which petitioners seek to have made permanent, thus, in effect, annulling the restraining order.

Petitioners' position, in sum, is that the Superior Court in entering and continuing the restraining order exceeded its jurisdiction for the reasons that the Attorney General did not exhaust the administrative remedies provided in A.R.S. § 37–214 and that as no appeal was duly taken under that section, the order of the Commissioner directing the sale of the parcels in issue is final; that by virtue of A.R.S. § 12–1802, subdivision 6, petitioners cannot be enjoined from performing their official duties; and that Title 37 of the Arizona Revised Statutes, enacted pursuant to Article X, Section 10 of the Arizona Constitution, A.R.S., vested petitioners with final authority with respect to sales of public land.

The Attorney General raises four objections to the contemplated sale: that the parcels of land were not appraised at their "true value" as required by Article X, Section 4 of the Arizona Constitution; that the land is being sold on credit without "ample security," as required by Article X, Section 4 of the Arizona Constitution; that A.R.S. § 37–241, which prescribes the terms of sale followed by petitioners, is unconstitutional; and that the interests of the State will be "prejudiced" by the sale, in violation of A.R.S. § 37–236. In answer to petitioners' contentions, the Attorney General urges that petitioners have not demon-

strated that the administrative remedies set forth in A.R.S. § 37–214 are available to him, and that in any event these remedies are directed only to his first objection, relating to the "true value" appraisal of the land, and are not applicable to the others; and that the restrictions set forth in A.R.S. § 12–1802 against enjoining the exercise of a public office do not apply to an official who has acted contrary to law. In addition, the Attorney General claims that a writ of prohibition is not an appropriate remedy herein.

An issue more basic than those enumerated above, and one which may be determinative of this proceeding, was raised by petitioners before the Superior Court and was joined by the Attorney General on the argument before this Court. That issue is whether the Attorney General had *standing* to institute on behalf of the State of Arizona the proceeding before the Superior Court to enjoin petitioners from selling the land in issue. The Attorney General predi-

cates his status on the decision of this Court in State ex rel. Morrison v. Thomas, 80 Ariz. 327, 297 P.2d 624, discussed below; petitioners dispute the applicability of that case to this proceeding.

It is clear that if, as a matter of law, the Attorney General did not have such standing and, accordingly, was not a proper party plaintiff, his petition should not have been entertained by the Superior Court and the temporary restraining order should not have issued. Also, if for these reasons the Superior Court should not have taken any proceedings on the Attorney General's petition, a writ of prohibition is a proper remedy for petitioners to prohibit further proceedings on the part of the Superior Court.[1]

There is thus presented to this Court the crucial question relating to the scope of the powers and duties of the Attorney General.

■ Article V, Section 1, of the Arizona Constitution, establishes the office of Attorney General within the Executive De-

---

[1] This Court has held that a writ of prohibition will issue against a lower court which does not have jurisdiction of the parties before it (D. W. Onan & Sons v. Superior Court, 65 Ariz. 255, 179 P.2d 243; see Van Ness v. Superior Court, 69 Ariz. 362, 364, 213 P.2d 899), and especially in a situation where the lower court has entered an injunction (see Valley Drive-In Theatre Corp. v. Superior Court, 79 Ariz. 396, 291 P.2d 213; Hislop v. Rodgers, 54 Ariz. 101, 92 P.2d 527). This rule has been applied and prohibition has issued where the lower court erred in refusing to dismiss an appeal which the appellant did not have a right to institute before such court (Beach v. Superior Court, 64 Ariz. 375, 173 P.2d 79), and where indispensable parties were not properly before the lower court (Bolin v. Superior Court, 85 Ariz. 131, 333 P.2d 295; cf. Siler v. Superior Court, 83 Ariz. 49, 316 P.2d 296). It follows that, if the Attorney General did not have authority to commence the instant action before the Superior Court in the name of the State, the Superior Court did not have jurisdiction over the State and, as no other party claiming such authority did appear, there was an absence of indispensable parties in such action.

partment of the State. Section 9 thereof provides:

"The powers and duties of * * * Attorney-General, * * * shall be as prescribed by law."

This Court has held that the "law" referred to in Article V, Section 9, is the statutory law of the State and not the common law. As was stated in Shute v. Frohmiller, 53 Ariz. 483, 494, 90 P.2d 998, 1003:

"It is true in this state, as in others, that the office of attorney general, together with the other executive offices created by the Constitution, is imbedded in that instrument, but it is equally true that the authority of the legislature to prescribe what the duties and powers of those occupying these offices shall be is imbedded there also, and, this being true, no common-law powers or duties can attach to that office but only those prescribed by statute."

See also Westover v. State, 66 Ariz. 145, 150, 185 P.2d 315, 318, where it was said that:

" * * * it is clear that in Arizona the Attorney General has no common-law powers * * *."

In State ex rel. Frohmiller v. Hendrix, 59 Ariz. 184, 188, 124 P.2d 768, 771, this Court concluded:

"We, therefore, must refer to the statutes in order to ascertain what powers and duties the legislature has conferred upon these officers. In so doing we should consider all the statutes affecting the question and so construe them together as to, if possible, give effect to all the provisions appearing therein."

The statutes which must be referred to are those relating to the official powers of the Attorney General, for it is clear that if he does not have authority to institute this proceeding in his official capacity, he has no authority to prosecute it here or elsewhere in his individual capacity. See A.R.S. § 41–191, subd. B; Conway v. State Consolidated Publishing Co., 57 Ariz. 162, 112 P.2d 218.

The powers and duties of the Attorney General and the Department of Law are set forth generally in Article 5, Chapter 1 of Title 41 of the Arizona Revised Statutes.

A.R.S. § 41–192, subd. A provides:

"The attorney general shall have charge of and direct the department of law, and shall serve as chief legal officer of the state. The attorney general shall:

"1. Be the legal advisor of the departments of the state and render such

legal services as the departments require.

\*   \*   \*   \*   \*   \*

"3. Approve long range plans for developing departmental programs therein, and coordinate the legal services required by other departments of the state or other state agencies."

A.R.S. § 41–193, subd. A establishes the Department of Law which, "unless otherwise provided by law," shall:

"1. Prosecute and defend in the supreme court all proceedings in which the state or an officer thereof in his official capacity is a party.

"2. At the direction of the governor or when deemed necessary by the attorney general, prosecute and defend any proceeding in a state court other than the supreme court in which the state or an officer thereof is a party or has an interest.

"3. Represent the state in any action in a federal court, the cost thereof and the expenses of the attorney general incurred therein to be a charge against the state.

"4. Exercise supervisory powers over county attorneys of the several counties in matters pertaining to that office and require reports relating to the public business thereof.

"5. At the direction of the governor, or when deemed necessary, assist the county attorney of any county in the discharge of his duties.

"6. Maintain a docket of all proceedings in which the attorney general is required to appear, showing the condition thereof, the proceedings therein, the proceedings subsequent to judgment and the reason for any delay of execution.

"7. Upon demand by the legislature or either house thereof, any public officer of the state or a county attorney, render a written opinion upon any question of law relating to their offices.

"8. Perform other duties prescribed by law."

■ The above provisions make it clear that the fundamental obligation of the Attorney General is to act as legal advisor to the official agencies of the State. The legal services of his Department must be furnished whenever required by a department of the State even in situations where the Attorney General may not agree with the policies pursued by the particular department. Thus, as stated in Crane v. Frohmiller, 45 Ariz. 490, 503, 45 P.2d 955, 961:

"So far as legal services are concerned, the Attorney General is required by law to furnish them. If for any reason he feels that he is personally unable properly to represent the state in the pending litigation, the

Legislature has given him unlimited power to choose any competent attorneys as assistants * * *."

The dependency of State departments upon the legal services of the Attorney General is made clear in A.R.S. § 41–192, which provides:

"E. Notwithstanding any other provision of law to the contrary, no state agency other than the attorney general shall employ legal counsel or make an expenditure or incur an indebtedness for legal services, but the interstate stream commission and the industrial commission shall be exempt from the provisions of this article."

Pursuant to the above section no State agency, other than the Attorney General and the two named commissions, may expend public funds for legal services, although an agency may authorize a member of the State bar to appear on its behalf (as apparently was done by petitioners in the instant proceeding), so long as State funds are not expended for his services. See State ex rel. Frohmiller v. Hendrix, 59 Ariz. 184, 124 P.2d 768; Industrial Commission v. School District No. 48, 56 Ariz. 476, 108 P.2d 1004.

Two propositions flow generally from this conception, embodied in our statutes, of the basic role of the Attorney General as "legal advisor of the departments of the state" who shall "render such legal services as the departments require" (A.R.S. § 41–192, subd. A, par. 1): the assertion by the Attorney General in a judicial proceeding of a position in conflict with a State department is inconsistent with his duty as its legal advisor; and the initiation of litigation by the Attorney General in furtherance of interests of the public generally, as distinguished from policies or practices of a particular department, is not a concomitant function of this role.

■  It is recognized that there are occasions on which the Attorney General may initiate proceedings on behalf of the State, and may even appear in opposition to a particular State agency, but these instances are dependent upon specific statutory grants of power. Thus, for example, under A.R.S. § 12–2041, the Attorney General may commence a quo warranto action "in the name of the state upon his relation, upon his own information * * * against any person who usurps, intrudes into or unlawfully holds or exercises any public office or any franchise within this state"; under A.R.S. § 35–212, the Attorney General "shall bring an action in the name of the state to enjoin the illegal payment of state money * * *"; and under A.R.S. § 41–193, subd. C, the Department of Law "may institute action * * * for recovery of escheats * * *." Also, pursuant to A.R.S. § 12–1841, in any proceeding in which a "statute, ordinance or franchise is alleged to be unconstitutional,

the attorney general of the state shall also be served with a copy of the proceeding and be entitled to be heard." As stated in Ethington v. Wright, 66 Ariz. 382, 388, 189 P.2d 209, 213:

"The object of this requirement is to protect the state and its citizens should the parties be indifferent to the outcome of the litigation."

See also, Valley National Bank of Phoenix v. First National Bank, 83 Ariz. 286, 296, 320 P.2d 689. Here, on the contrary, the Attorney General is attacking the constitutionality of a state statute.

There are specific situations also in which the Attorney General may appear in opposition to a particular agency. Thus, under A.R.S. §§ 40–253 and 40–254, "the attorney general on behalf of the state" may apply to the Corporation Commission for a rehearing of any matter upon which the Commission has made an order or decision and, if he is "dissatisfied" with such order or decision, he may "commence an action" to set it aside. Even in this instance, however, the Corporation Commission is not precluded from calling upon the Attorney General, pursuant to A.R.S. § 41–192, to represent it personally or through his assistants. A further example exists where two agencies of the State assert contrary positions on an issue presented to a court for decision. There, the Attorney General may, as was done in

State ex rel. Conway v. Hunt, 59 Ariz. 256, 126 P.2d 303, reversed on rehearing on other grounds, 59 Ariz. 312, 127 P.2d 130, appear through his deputies for both agencies or their officers.

The above analysis clarifies the scope of A.R.S. § 41–193, subd. A, par. 2, which provides that the Department of Law in certain circumstances shall "prosecute and defend any proceeding in a state court other than the supreme court in which the state or an officer thereof is a party or has an interest." That section presupposes a properly instituted proceeding in which the State or an officer thereof "is a party or has an interest" and does not permit the Attorney General, in the absence of specific statutory power, to initiate an original proceeding. To hold otherwise would render meaningless the above-noted statutory provisions which authorize the Attorney General to commence proceedings in certain specific circumstances, and would, in effect, vest him with common law powers contrary to the clear purport of our Constitution and statutes (see, e. g., Shute v. Frohmiller, supra; Westover v. State, supra; State ex rel. Frohmiller v. Hendrix, supra).'

We recognize that the term "prosecute" may in some situations, especially with reference to criminal actions, include the power to commence a proceeding, but, as discussed above, that is not the meaning of "prosecute" in the context of A.R.S.

§ 41–193, subd. A, par. 2. The distinction between the terms "commence" and "prosecute" has been noted by this Court (see W. T. Rawleigh Co. v. Spencer, 58 Ariz. 182, 185–186, 118 P.2d 674; Forbach v. Steinfeld, 34 Ariz. 519, 527–528, 273 P. 6), and was recognized by the legislature when it authorized the State Land Department, one of the petitioners herein, to "commence, prosecute and defend" actions affecting State lands and directed that such actions shall be "commenced and prosecuted" at the request of the Department by the Attorney General (A.R.S. § 37–102, subd. C). In addition, where the legislature intended to authorize the Attorney General to initiate proceedings, it has so provided in clear terms. Thus, in the situations noted above, a quo warranto action may be "brought" by the Attorney General (A.R.S. § 12–2041, subd. A); the Attorney General shall "bring an action" to enjoin the illegal payment of State money (A.R.S. § 35–212); the Department of Law may "institute action" for recovery of escheats (A.R.S. § 41–193, subd. C); and the Attorney General may "commence an action" to set aside an order of the Corporation Commission (A.R.S. § 40–254, subd. A).

■ The statutes relating to the State Land Department and the State Land Commissioner confirm the role of the Attorney General as legal advisor and not as policy maker, and do not grant him special powers, such as those noted above which apply to other specific situations, to initiate legal proceedings on behalf of the State or in opposition to petitioners herein.

A.R.S. § 37–102, subd. C, provides:

"The [state land] department may, in the name of the state, commence, prosecute and defend all actions and proceedings to protect the interest of the state in lands within the state or the proceeds thereof. Actions shall be commenced and prosecuted at the request of the department by the attorney general, a county attorney, or a special counsel under the direction of the attorney general."

Under A.R.S. § 37–132, subd. A, the State Land Commissioner shall

"1. Exercise and perform all powers and duties vested in or imposed upon the state land department."

In A.R.S. § 27–521, which relates to oil and gas production and conservation, it is provided:

"The attorney general shall be attorney for the [state land] commissioner. The commissioner may in cases of emergency or in special cases, upon request of the attorney general, retain additional counsel to assist the attorney general, and for such purpose may expend funds available under this article."

We come next to State ex rel. Morrison v. Thomas, 80 Ariz. 327, 297 P.2d 624, (followed in State ex rel. Morrison v. Garrett, 80 Ariz. 337, 297 P.2d 631, and State ex rel. Morrison v. Thomas, 80 Ariz. 338, 297 P.2d 631), upon which the Attorney General has placed great reliance. In the Thomas case the Superintendent of the Department of Liquor Licenses and Control denied respondent's application for a liquor license on the ground that such license, if issued, would exceed the quota prescribed by statute. Respondent appealed to the superior court, which reversed the Superintendent and directed him to issue a license. As there was no statutory right of direct appeal to this Court from that decision, the Attorney General prepared to apply for a writ of certiorari. Upon the failure of the Superintendent to execute the necessary documents, the Attorney General applied for the writ in the name of the State of Arizona on his own relation.

This Court held that the State was the real party in interest in the proceeding before the superior court and had standing, in the absence of affirmative action by its official agent (the Superintendent), to apply for the writ of certiorari. This Court held further that, in accordance with section 4–607(a) (1), 1954 Supp. A.C.A.1939 (now A.R.S. § 41–193, subd. A, par. 1), which required the Department of Law to "prosecute and defend in the supreme court all causes in which the state or an officer thereof in his official capacity is a party," the Attorney General was the proper State official to institute the action.

It is clear that the majority holding of this Court in the Thomas case is consistent with the statutory duty of the Attorney General discussed above. First, the position asserted by the Attorney General in Thomas was in support of a determination officially made by an agency of the State. Second, the proceeding before this Court was for the purpose of reviewing a judgment entered in an action in which a proper state official was already a party and of exhausting the judicial remedies available to such official. The fact that the Attorney General commenced an original proceeding in certiorari is of little moment here, as there that was the only remedy available to obtain direct review by this Court (State ex rel. Morrison v. Thomas, supra, 80 Ariz. at pages 334–335, 297 P.2d at pages 628–629).

Thus, the Thomas case, which affirms the statutory duty imposed upon the Attorney General, does not support the claim of status by the Attorney General in the instant case. Here, the position of the Attorney General is in direct conflict with an official determination, respecting the sale of the public lands in issue, made by petitioners who are vested by statute with full authority over these lands (A.R.S. Title 37). Nor is there anything that appears from the record herein to indicate that the

Attorney General is acting on behalf of any other State agency which is empowered to maintain, and has maintained, a position contrary to that taken by petitioners. Further, the Attorney General here did not seek review by this Court of a judicial proceeding in which a proper State official had been made a party, but rather initiated an original action on his own relation in the superior court.

■ The authority here claimed by the Attorney General has been delegated by our Constitution and statutes to the Governor. Under Article V, Section 4, of the Arizona Constitution, the Governor "shall take care that the laws be faithfully executed." A.R.S. § 41–101, subd. A provides that the Governor "shall supervise the official conduct of all executive and ministerial officers" (par. 1), "shall see that all offices are filled and the duties thereof performed, or, in default thereof, invoke such remedy as the law allows" (par. 2), and "may require any officer or board to make special reports to him upon demand in writing" (par. 9). With reference to the instant situation, the State Land Commissioner is appointed by the Governor (A.R.S. § 37–131, subd. B), may be removed by the Governor for cause (A.R.S. § 37–131, subd. C), and is required to report annually to the Governor concerning the activities and operations of the State Land Department (A.R.S. § 37–132, subd. A, par. 8; A.R.S. § 37–383, subd. B). Significantly, these powers are not vested in the Attorney General. Thus, the Governor alone, and not the Attorney General, is responsible for the supervision of the executive department and is obligated and empowered to protect the interests of the people and the State by taking care that the laws are faithfully executed.

We recognize that in initiating the instant proceeding the Attorney General sought to have the courts review a matter vitally affected with the public interest, and we commend his vigilance and public spiritedness in that regard. His standing to institute such action, though predicated on the interest of the State and public generally, must, however, be supported by statute. We find no such support in this case.

■ We hold that the Attorney General was without authority to initiate the proceeding before the Superior Court to enjoin petitioners from selling the public lands here in issue. It thus becomes unnecessary for us to consider the other issues raised by the parties on this application.

The alternative writ of prohibition heretofore issued is made peremptory.

STRUCKMEYER, C. J., and PHELPS, UDALL and JOHNSON, JJ., concur.